IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---------------------------------------------------------------x

**CAMERON KELTS**
P.O. Box 220
Seffner, Florida 33583

and

**JEFFERY SULLIVAN**
P.O. Box 220
Seffner, Florida 33583

      **Plaintiffs,**

vs.

**KING OCEAN SERVICES**
11000 NW 29 Street, Suite 201
Doral, Florida 33172

and

**OSCAR CALDERON**
XV3V+4WM, Zona Industrial
San Jose, Costa Rica

      **Defendants.**

---------------------------------------------------------------x

Civil Action No.

FILED BY PG D.C.
APR 04 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, CAMERON KELTS ("Kelts") and JEFFERY SULLIVAN ("Sullivan") (hereinafter collectively referred to as "Plaintiffs"), who, via *Pro Se* submission files this, their Complaint for Damages and Demand for Jury Trial against Defendants KING OCEAN SERVICES ("King Ocean") and OSCAR CALDERON ("Calderon") (hereinafter collectively

1

referred to as "Defendants"), and in support thereof, states the following:

## PARTIES

1. Plaintiff Kelts is *sui juris* before this Court and at all times material, was a resident of the State of Florida, Miami-Dade County.

2. Plaintiff Sullivan is *sui juris* before this Court and at all times material, was a resident of the State of Florida, Hillsborough County.

3. Defendant King Ocean is a for-profit entity, headquartered in Doral, Florida, and according to its website is a "Cargo Transportation Service specialized in various types of cargo containerized and general including, but not limited to raw materials, jewelry and clothing accessories, foodstuffs, refrigerated cargo, vehicles and parts, and construction machinery and building materials."

4. Defendant Calderon is *sui juris* before this Court, an adult over the age of 18, and at all times material herein, acted as a Broker working under the direction of Defendant King Ocean. Upon information and belief, Calderon is a citizen of Costa Rica.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this court since a significant amount of the events and conduct complained of herein, all occurred in the Southern District of Florida and is invoked pursuant to 28 U.S.C. 1319(b) & (c).

2

7. Personal jurisdiction is established over Calderon as he acted as an Agent of King Ocean and had minimum contacts with the State of Florida to establish personal jurisdiction.

8. All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

9. All actions taken by the Defendants' employees as alleged in this complaint were done within the scope of their official duties and under the color of law.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

10. In or around 2019, Plaintiffs began importing vehicles from Miami, Florida to Costa Rica with King Ocean hired as their shipping courier.

11. On two prior occasions, King Ocean performed the delivery of both a Corvette and Mercedes without incident.

12. A third commercial truck was shipped during the beginning of the COVID pandemic in early 2020 and was held in storage with King Ocean for long term storage pending the lessening global effects of the pandemic, and the truck's ability to travel freely through the Panamanian Border, and also North America with Costa Rican Manufactured goods. (*See Exhibit 1*).

13. Plaintiffs paid King Ocean in full for all transport fees and also brought the storage amounts due as receivable after an approximate year of storage that had accumulated.

14. Communications, emails, money transfers and multiple phone calls were handled correctly throughout all previous transactions between Plaintiffs and King Ocean.

15. After approximately one year of COVID-related border restrictions, Plaintiffs were solicited and hired Calderon, a King Ocean Broker, to act as sales broker to handle the sale of said truck. (*See Passport ID, Exhibit 2*).

16. Calderon had contacted Plaintiffs stating he had a buyer and requested a commission of $3,000.00 USD upon the completion of sale.

17. Plaintiffs agreed to retain Calderon under Terms and Conditions set by King Ocean.

18. Calderon had indicated that he had close family ties with King Ocean personnel and would be able to facilitate the sale without incident as he claimed to achieve many times in the past.

19. In addition, Plaintiffs hired Calderon as their Uber Driver during several visits to Costa Rica and to further discuss future imports.

20. In or around mid-September 2021, Calderon notified Plaintiffs that he had acquired a buyer who was willing to pay $47,500.00 plus $8,340.00 in taxes.

21. Plaintiffs had purchased the vehicle for $65,000.00 but agreed to the sale reduction rather than absorb the cost of shipping back to the United States.

22. Calderon requested that the original title be mailed per necessity for the purchasing client to obtain financing.

23. Plaintiffs retained attorney Gaudy Mora (hereinafter "Attorney Mora") in San Jose, Costa Rica to receive an unsigned and unendorsed title to provide to Calderon for bank reference.

24. In addition, Attorney Mora was to handle all monies, title transfers and related documents as needed in Plaintiffs' behalf.

25. Historically, Attorney Mora performed many transactions and representations without failures and is still involved to date.

26. Alarmingly, Plaintiffs began receiving insurance quote phone calls for rates to transport said vehicle to Panama and within Costa Rica "based on the new license plate registration in Costa Rica."

27. Plaintiffs both began making numerous calls to King Ocean asking for the status of the truck storage in which Plaintiffs were told they released the ownership and possession to their sales representative, Calderon.

28. Sullivan immediately flew to Costa Rica and visited King Ocean's office personnel.

29. Sullivan was shown a copy of an email that was derived for a different spelling of Plaintiff Kelts' past emails claiming that Kelts was granting permission for Calderon to own the vehicle and take possession without any monies received.

30. Sullivan was also shown a copy of a title with Plaintiff Kelts' signature as seller that was attached to Kelts' Passport for signature verification.

31. The signatures were so completely different that the King Ocean Representative agreed that this was a clear oversight, instructing Sullivan that they would contact their agent Calderon, to address Plaintiffs' concerns and regroup the following day.

32. Sullivan requested copies, but King Ocean denied this request, claiming their legal department would have to consent to the request and Plaintiffs would need to make a formal written request.

33. Sullivan returned the following day at the agreed upon appointment but was stopped at the front door with instructions to return the following day, stating that King Ocean's "Investigation was not complete."

34. Sullivan returned for a third day, and was told that due to the circumstances, he would have to contract King Ocean's Legal Department and was instructed to leave the premises after multiple efforts to regroup with the initial King Ocean personnel, but adamantly denied.

35. Plaintiffs made numerous phone calls only to be placed on indefinite hold times and in most cases, hung up upon. On several other occasions, Sullivan would speak in English, then told by Defendants that they only spoke Spanish.

36. Sullivan would then switch to his fluent Spanish ability to the surprise of Defendants in which they would simply hang up as a way to discontinue any further resolution to Plaintiffs' substantial losses.

37. At no time did King Ocean personnel ever call, email, text or inquire in any way or format that their sales broker had the complete rights, ownership, and power of attorney anew to receive delivery, ownership, and complete custody beyond merely a sales representative status.

38. King Ocean has, and had, at all times material, Plaintiffs' emails, Whatsapp numbers, cell phone numbers and their initial shipping broker's contact information and has, to this date of filing, NEVER contacted either Plaintiff to assist, question, and advocate in the recovery of said vehicle, file police reports or notify any appropriate personnel.

39. Defendants have completely ignored Plaintiffs' requests for help and chronologically abandoned them on all levels, and thus, the need for this civil case to run consecutive to the criminal case filed in Costa Rica in which Attorney Mora was essential for such representation. (*See Exhibit 4*)

40. Consequently, Kelts had to fly 30 hours and 5 different flights from Thailand and spend two weeks meeting with prosecutors, Attorney Mora, and law enforcement personnel to

file a formal criminal complaint against Calderon and other staff members associated with said Grand Theft.

41. Plaintiffs have had to endure the expenses of flights, hotel, attorneys, loss of employment during recovery attempts, and the complete loss of said vehicle in which the Civil Case has justifiable cause.

42. As a direct and proximate result of Defendants' actions as described herein, Plaintiffs have been damaged.

## CAUSES OF ACTION

## COUNT I – CIVIL THEFT

43. Plaintiffs re-allege the allegations contained in the preceding paragraphs above, as if fully set forth herein.

44. Florida Statute 812.014 defines civil theft:

   1. A person is guilty of theft if he knowingly obtains or uses or endeavors to obtain or use the property of another with intent to either temporarily or permanently:

   A. Deprive the other person of a right to the property or a benefit therefrom.

   B. Appropriate the property to his own use or to the use of any person not entitled thereto.

45. In Florida, the cause of action for civil theft, however, derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section. The civil remedy for theft in Florida is: "Any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of any violation of the provisions of ss. 812.012-812.037

has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts." *Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551 - Dist. Court, SD Florida 1994

46. Defendants, in particular Calderon, purposely and knowingly wrongfully transferred the ownership of the vehicle.

47. Plaintiffs were deprived of use and possession of the vehicle by Defendants.

48. Calderon with the assistance, consent and advocacy of King Ocean personnel, appropriated the vehicle for his own use.

49. As a result of Defendants' wrongful conduct, Plaintiffs have been damaged.

## COUNT II - CONVERSION

50. Plaintiffs re-allege the allegations contained in the preceding paragraphs above as though fully set forth herein.

51. Conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time. It is the disseisin of the owner or an interference with legal rights which are incident to ownership, such as a right to possession." *Burger King Corp. v. Austin*, 805 F.Supp. 1007, 1012 (S.D.Fla.1992) (citations omitted); see also *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir.1990) (defining tort and finding that plaintiff had failed to state claim for conversion). Florida courts have divided this description into three elements: (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. See *Warshall v. Price*,

629 So.2d 903, 904 (Fla. 4th DCA 1993) (analyzing each element to find that plaintiff had established conversion claim).

52. The vehicle was in the legal name of Plaintiffs. Plaintiffs were the title owner of the vehicle.

53. Calderon, with the assistance, consent and advocacy of King Ocean personnel, wrongfully and illegally converted the vehicle into his name.

54. Plaintiffs never gave Calderon the authority to "take the vehicle and run."

55. Calderon knew, or should have known, that he had no legal right to ownership of the vehicle without requisite authority from Plaintiffs.

56. Calderon wrongfully interfered in the ownership of the vehicle, to the detriment of Plaintiffs.

57. As a result of Defendants' wrongful conduct, Plaintiffs have been damaged.

## COUNT III – FRAUDULENT TRANSFER

### (Defendant Calderon only)

58. Plaintiffs re-allege the allegations contained in the preceding paragraphs above as though fully set forth herein.

59. Calderon with the assistance, consent and advocacy of King Ocean personnel, knew, or should have known, that the vehicle was not his to transfer any ownership interest.

60. Calderon knowingly transferred ownership of the vehicle.

61. Calderon forged documents to gain possession of the vehicle.

62. Calderon gained possession of the vehicle without Plaintiff's knowledge or consent.

63. Calderon represented himself as a legitimate broker for King Ocean with the intent of defrauding Plaintiffs of possession and ownership of the vehicle.

64. Calderon's actions were wrongful and illegal.

65. As a direct result of Calderon's fraudulent conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs respectfully pray for this Court to enter judgment against Defendants as follows:

1. For a declaration that Defendants' actions as alleged herein are unlawful;
2. For actual damages of $76,500.00;
3. For interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;
4. For reasonable costs of suit; and
5. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 28, 2022.

Respectfully submitted,

    /s/ Cameron Kelts

_____

**CAMERON KELTS**
P.O. Box 220
Seffner, Florida 33583
Email: cameronkelts@gmail.com
Phone: 1.305.744.6775

and

    /s/ Jeffery Sullivan

_____

**JEFFERY SULLIVAN**
P.O. Box 220
Seffner, Florida 33583
Email: jeffinyoureye@yahoo.com
Phone: 1.813.598.7737

*Pro Se Plaintiffs*

**UNITED STATES POSTAL SERVICE** — Retail

US POSTAGE PAID
$8.95
Origin: 28334
03/30/22
3621760334-04

**PRIORITY MAIL 2-DAY®**

0 Lb 8.10 Oz
1004

EXPECTED DELIVERY DAY: 04/02/22

C075

SHIP TO:
400 N MIAMI AVE
RM 8N09
MIAMI FL 33128-1805

USPS TRACKING® #



9505 5131 4837 2089 3048 89

- Order supplies online.*
- When used internationally, a customs declaration label may be required.
* Domestic only


PS00001000014
EP14F Oct 2018
⊙D: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PRESS FIRMLY TO SEAL

**PRIORITY MAIL**
FLAT RATE
POSTAGE REQUIRED

**PRIORITY ★ MAIL ★**

UNITED STATES POSTAL SERVICE
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
CAMERON KELTS
P.O. BOX 220
SEFFNER, FL 33583

TO:
CLERK OF COURT
USDC - S.D. FLA
400 N. MIAMI AVE., ROOM 8N09
MIAMI, FL 33128

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

* Domestic only.   * For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.